**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**RAPHAEL PEREZ-LEAL,**

Civil No. 01-1577 (PAM/SRN)

Petitioner,

v.

**REPORT AND RECOMMENDATION**

**IMMIGRATION AND NATURALIZATION SERVICE, and CONSTANCE REESE, Warden, FMC-Rochester,**

Respondents.

---

Raphael Perez-Leal, FMC-Rochester, 2110 East Centre Street, PMB 4000 , #09140-000, Rochester, MN 55903, Petitioner, pro se.

Friedrich A.P. Siekert, Assistant United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Respondents.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Raphael Perez-Leal for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He claims that he is being detained by the United States Immigration and Naturalization Service ("INS") in violation of his rights under federal law and the Constitution. Respondents have filed a Return, contending that the petition should be dismissed. (Doc. No. 4.) Petitioner has filed an unsigned Traverse in response to the Return, urging the Court to issue a writ. (Doc. No. 6.)

The matter has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1(c). For the reasons discussed below,

APR 0 9 2002

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the Court recommends that Petitioner's habeas corpus petition be DISMISSED WITH PREJUDICE.

## I. BACKGROUND[1]

Petitioner is a Cuban alien who came to the United States in 1980 during the "Mariel Boatlift."[2] Like most other Mariel Cubans, Petitioner was not granted legal admission to this country when he arrived here. Instead, he was allowed into the country on "parole," and he has always been, and still is, classified as a "parolee." See 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.12 (parole determinations and revocations respecting Mariel Cubans). As a result, Petitioner is considered to be an "excludable" or "unadmitted" alien. Even though Petitioner has been physically present in this country for more than twenty years, he has the same legal status as a person stopped at the border while trying to enter the United States. See Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir. 2001) ("[a]lthough he has been physically present in the United States for more than twenty years, Sierra [a Mariel Cuban] is 'legally considered to be detained at the border and hence as never having effected entry into this country.'"), cert. denied, 122 S. Ct. 676 (2001) (citations omitted).

Petitioner arrived in Key West, Florida, on June 4, 1980, as part of the Mariel Boat Lift exodus from Cuba. Shortly thereafter, he was transferred to the Fort McCoy Refugee Encampment in Wisconsin. Once paroled into the United States, Petitioner resettled with a church sponsor in the Chicago area, where he remained until 1982.

---

[1] The factual background of this case comes primarily from the Return of Respondents Immigration & Naturalization Service and Constance Reese, Warden, FMC-Rochester (Doc. No. 4). Petitioner admits in his Traverse that "the facts are essentially undisputed." (Traverse at 2.)

[2] A brief synopsis of the Mariel Boatlift can be found at Cabellero v. United States, 145 F. Supp. 2d 550, 552 (D.N.J. 2001).

While in Chicago, Petitioner was arrested (but never convicted) for various crimes. In 1982, Petitioner relocated to San Diego, California, where he continued to be arrested on various criminal charges. In late 1983, Petitioner was convicted on narcotics charges, and sentenced to 135 days in jail and twenty-four months probation. After his release, however, Petitioner was convicted in 1985 of forced assault with a deadly weapon, and narcotics possession, resulting in the revocation of his probation.

After completing his sentence, Petitioner's immigration parole was revoked, and the INS took him into custody on August 19, 1987. However, on March 2, 1988, the INS approved Petitioner's conditional re-release on parole, and Petitioner once again was free. Two years later, Petitioner was again convicted on narcotics charges. After serving his sentence for this crime, the INS revoked Petitioner's parole again, and commenced exclusion proceedings against him, based (at least in part) on his several convictions. A hearing was held, and on October 1, 1992, an Immigration Judge found Petitioner to be excludable. Petitioner did not appeal that decision. Following the entry of his exclusion order, Petitioner remained in INS custody pending his return to Cuba. Although the INS has determined that Petitioner should be removed from the United States to Cuba, that has not yet occurred because Cuba will not accept him.

Because he is a Mariel Cuban, Petitioner is entitled to an annual review of his continuing post-exclusion detention, pursuant to the "Cuban Review Plan" set forth at 8 C.F.R. § 212.12. Under that plan, the INS can free Petitioner from confinement if that appears to be appropriate. He can be re-paroled, subject to whatever terms and conditions the INS might deem proper.

The INS reviewed Petitioner's status pursuant to the Cuban Review Plan in 1994 and 1995, and determined on each of those occasions that he should not be re-paroled. In 1996, however, the INS concluded that Petitioner could be released on parole again, and on March 13, 1996 Petitioner was freed once more.

Two years after Petitioner's release, on December 28, 1998, he was arrested and convicted on a domestic abuse charge, and sentenced to time served. One month later, on January 28, 1999, Petitioner again was convicted on a domestic abuse charge, and was sentenced to probation. Petitioner was convicted for a third time, on July 21, 2000, for yet another domestic abuse charge and was sentenced to ninety days in jail. Following Petitioner's release from custody, the INS again took him into custody and revoked his immigration parole on August 12, 2000.

Petitioner has been detained by the INS continuously since August 12, 2000, and neither Petitioner nor Respondents have suggested that he is likely to leave INS custody in the foreseeable future. Due to Petitioner's serious medical conditions,[3] he has remained in detention at the Federal Medical Center in Rochester, Minnesota. At Petitioner's most recent review by the Cuban Review Panel on September 5, 2001, the Panel determined that Petitioner was ineligible for parole at that time.

It is the prospect of indefinite detention that prompted Petitioner to seek federal habeas corpus relief. He is <u>not</u> currently challenging the validity of his exclusion order; instead, he is challenging the INS's authority to keep him incarcerated until Cuba agrees to take him back – regardless of how long it might take for that to occur. His present

---

[3] Petitioner suffers from primary sclerosing cholangitis, a recurrent obstructive jaundice that generally progresses to cirrhosis, portal hypertension, and liver failure; probable cholangiocarcinoma, a malignant glandular cancer in the bile ducts; Hepatitis B; Type II diabetes mellitus; and hypertension.

habeas petition lists as his specific grounds for relief that his continuing INS detention violates the constitutional guaranty of due process. Respondents acknowledge that Petitioner's claims can properly be raised and entertained in a § 2241 habeas corpus proceeding (see INS v. St. Cyr, 121 S. Ct. 2271, 2278-87 (2001); Zadvydas v. Davis, 121 S. Ct. 2491, 2497-98 (2001)), but they contend that his current claims should be dismissed on the merits. The Court agrees.

## II. PETITIONER'S DUE PROCESS CLAIM

Petitioner claims that his ongoing INS detention violates the Fifth Amendment's Due Process Clause. Similar due process claims have been raised by many other Mariel Cubans who are being detained while awaiting exclusion, and those claims have been rejected in virtually every case.[4] See, e.g., Hoyte-Mesa v. Ashcroft, 272 F.3d 989 (7th Cir. 2001); Sierra v. INS, 258 F.3d 1218 (10th Cir.), cert. denied, 122 S. Ct. 676 (2001); Carrera-Valdez v. Perryman, 211 F.3d 1046 (7th Cir. 2000); Guzman v. Tippy, 130 F.3d 64 (2nd Cir. 1997); Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir.) (en banc), cert. denied, 516 U.S. 976 (1995); Gisbert v. Attorney General, 988 F.2d 1437 (5th Cir.), amended by 997 F.2d 1122 (5th Cir. 1993).

The courts that have previously denied the due process claims of Mariel Cubans facing indefinite detention have relied primarily on Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953). In that case, the Supreme Court rejected the constitutional claims of an inadmissible alien named Ignatz Mezei, who was facing indefinite INS confinement after being stopped at Ellis Island while attempting to enter the United

[4] One notable exception is Rosales-Garcia v. Holland, 238 F.3d 704 (6th Cir. 2001). However, on December 10, 2001, the Supreme Court vacated the Sixth Circuit's decision in that case. 122 S. Ct. 662 (2001).

States.[5] The United States would not admit Mezei into this country, and no other country would accept him. Thus, he was trapped on Ellis Island with no place to go. He filed a habeas corpus petition, which eventually came before the Supreme Court.

The Supreme Court rejected Mezei's constitutional objections to his indefinite detention on Ellis Island. The Court emphasized that Mezei never gained entry to the United States, and he was therefore not entitled to the constitutional protections afforded to aliens who have gained entry (legally or otherwise) to this country. Id. at 212 ("[i]t is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law . . . . But an alien on the threshold of initial entry stands on a different footing."). Because Mezei was an excludable alien, the Court concluded, the Constitution provided him no protection from indefinite detention. Id. at 214-15. The Court further stated that "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Id. at 212 (citation omitted).

Mezei has been followed in the more recent cases that have considered the constitutional claims of Mariel Cubans facing indefinite detention pending enforcement of their exclusion orders. In Barrera-Echavarria, for example, the Ninth Circuit Court of Appeals held that excludable aliens do not "have a constitutional right to be free from detention, even for an extended time." 44 F.3d at 1449. The Fifth Circuit has likewise concluded that, pursuant to Mezei, excludable Cubans have no due process protection from indefinite detention. Gisbert, 988 F.2d at 1443-44. In Carrera-Valdez, the Second

[5] Actually, the alien in Mezei was attempting to re-enter the country. He had lived in the United States for approximately twenty-five years before traveling to Rumania to visit his dying mother. When he tried to return to the United States, he was stopped at the border and subjected to indefinite detention. 345 U.S. at 208-09.

Circuit used equally blunt language: "Indefinite detention of excludable aliens does not violate due process." Guzman, 130 F.3d at 66, citing Mezei, 345 U.S. at 212.

Just last year, the Supreme Court indicated in Zadvydas v. Davis, supra, that Mezei is – at least for now – still good law. 121 S. Ct. at 2501 ("we need not consider the aliens' claim that subsequent developments have undermined Mezei's legal authority"). In Zadvydas, the Court considered the indefinite detention of two resident aliens, that is, aliens who, unlike Petitioner, had gained admission into the United States. Although the Court expressed serious doubts about the constitutionality of allowing resident aliens to be detained indefinitely while awaiting removal from the United States, the Court also emphasized that, pursuant to Mezei, excludable aliens such as Mariel Cubans, do not enjoy the same type of constitutional protections against indefinite detention. Id. at 2500.[6]

In Zadvydas, the Supreme Court concluded that the resident alien petitioners could not be detained by the INS indefinitely. However, Zadvydas is distinguishable from the present case in two critical respects. First, as just mentioned, Zadvydas involved removable resident aliens, not excludable aliens. The Supreme Court made it

[6] The Court explained in Zadvydas that:

> Although Mezei, like the present cases, involves indefinite detention, it differs from the present cases in a critical respect . . . . [Mezei] was "treated," for constitutional purposes, "as if stopped at the border." . . . And that made all the difference.

121 S. Ct. at 2500 (citations omitted).

quite clear that, in light of Mezei, excludable aliens facing indefinite detention would have no viable constitutional claim.[7]

Zadvydas is also distinguishable from the present case because the aliens in that case were being detained under a different statute from the one applicable to Petitioner here. The aliens in Zadvydas had been ordered out of the country after the immigration laws had been changed by the 1996 enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"); thus, those aliens were being detained pursuant to 8 U.S.C. § 1231(a)(6). In Zadvydas, the Court concluded that § 1231(a)(6) does not authorize the INS to detain aliens indefinitely, and that the Attorney General therefore lacked the statutory authority to continue to detain the Zadvydas aliens after it became clear that there was "no significant likelihood of removal in the reasonably foreseeable future." 121 S. Ct. at 2505. The instant Petitioner is in a different position, because he was ordered out of the country before AEDPA and IIRIRA were enacted, and his detention is therefore based on the older, pre-1996 law – more specifically, 8 U.S.C. § 1226(e).[8] Section 1226(e), unlike the new § 1231(a)(6), does authorize the indefinite

---

[7] This point seems to be reinforced by the Supreme Court's rejection of the Sixth Circuit's opinion in Rosales-Garcia. See footnote 4, supra.

[8] Petitioner's case is governed by the old law pursuant to § 309(c)(1) of the IIRIRA, which provides that, as a general rule, the old law should be applied to exclusion/deportation proceedings commenced before April 1, 1997 – the effective date of the IIRIRA. See Afolayan v. INS, 219 F.3d 784, 787 (8th Cir. 2000) ("IIRIRA generally does not apply to deportation proceedings initiated prior to April 1, 1997); Carrera-Valdez, 211 F.3d at 1048 (former § 1226(e) "applies to persons who . . . were subject to an order of exclusion when the new legislation took full effect on April 1, 1997"). See also Rosales-Garcia, 238 F.3d at 715 (finding former § 1226(e) to be applicable to habeas petitioner whose exclusion order was entered before April 1, 1997), vacated on other grounds, 122 S. Ct. at 662. Petitioner's exclusion order was entered on

detention of excludable aliens who have been convicted of "aggravated felonies." Gisbert, 988 F.2d at 1445-47; Carrera-Valdez, 211 F.3d at 1048. See also Rosales-Garcia, 238 F.3d at 716 (noting that "[m]any circuits, including the Second, Third, Fifth, Seventh, Ninth, and Tenth Circuits have found former § 1226(e) to authorize the Attorney General to detain indefinitely an excludable alien who has been convicted of an aggravated offense," and concluding that § 1226(e) "clearly authorizes the Attorney General to detain an excludable alien indefinitely"), vacated on other grounds, 122 S. Ct. 662.[9] Because Petitioner was convicted of an aggravated felony,[10] and his case is governed by the old law (§ 1226(e)), the Attorney General does have the statutory authority, as well as the constitutional authority, to detain him indefinitely.[11]

---

October 1, 1992, which was well before IIRIRA became law; therefore, his case is governed by § 1226(e), and not by § 1231(a)(6).

[9] Rosales-Garcia presumably was vacated because the Supreme Court found the Sixth Circuit's constitutional analysis to be faulty in light of Zadvydas. Because Zadvydas did not address the old pre-AEDPA, pre-IIRIRA statute (i.e., § 1226(e)), there is no reason to believe that the Supreme Court disagreed with the Sixth Circuit's understanding of that statute.

[10] Petitioner's 1990 conviction for transportation and sale of narcotics/controlled substances constitutes an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(B), because it was a "drug trafficking crime" under 18 U.S.C. § 924(c); that is, it was a felony and it was punishable under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. See Herrera-Soto v. INS, No. 98-2979, 1999 WL 272422 (8th Cir. 1999).

[11] Because Petitioner's case is governed by the old statute, it is distinguishable from Borrero v. Aljets, 178 F. Supp. 2d 1034 (D. Minn. 2001). In that case, the Court concluded that Zadvydas was applicable to a Mariel Cuban habeas petitioner because he was being detained under the post-AEDPA, post-IIRIRA statute, namely § 1231(a)(6), which applies not only to resident aliens, but also to excludable aliens. Borrero, 178 F. Supp. 2d at 1043-44 ("[a]s the Court in Zadvydas has concluded that Congress did not intend § 1231 to permit indefinite detention of removable aliens, this Court concludes the statute must be given the same construction when it is applied to excludable/inadmissible aliens"). The reasoning of Borrero is inapplicable here because the instant Petitioner is being detained pursuant to a different statute – one that does authorize indefinite INS detention of excludable aliens.

## III. CONCLUSION

In sum, because Petitioner is an excludable alien, rather than a resident alien who has been ordered removed, his constitutional right to due process is limited by the Supreme Court's decision in Mezei. According to Mezei, the Due Process Clause does not give Petitioner any constitutional protection from indefinite detention. He is entitled only to whatever protections the federal statutes and administrative regulations may provide him. Thus, he is entitled to have his case considered pursuant to the Cuban Review Plan (8 C.F.R. § 212.12), but that is all. Guzman, 130 F.3d at 66 ("[a]n excluded alien's rights are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment"); Gisbert, 988 F.2d at 1442 ("excludable aliens are entitled only to those due process rights as are provided by law"). See also Hoyte-Mesa, 272 F.3d at 992 (noting that the length of a Mariel Cuban's detention "now depends on the outcome of his annual parole review"). The record shows that Petitioner has been receiving regular reviews under the Cuban Review Plan, including a review as recently as September 13, 2001, and he therefore has been receiving all the due process to which he is entitled.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Perez-Leal's Petition for Writ of Habeas Corpus (Doc. No. 1) be **DENIED.**

Dated: April 9, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order of judgment of the District Court, and therefore may not be appealed directly to the Circuit Court of Appeals.